UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAZEL THOMAS, | ) | Case No. 1: 11 CV 2727 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CUYAHOGA METROPOLITAN | ) | |
| HOUSING AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motions of Defendants Brandon Hizak and Cuyahoga Metropolitan Housing Authority ("CMHA") for Summary Judgment. (ECF #34 and #38) For the reasons that follow, the Motion of CMHA is granted and the Motion of Officer Hizak is granted in part.

### FACTUAL BACKGROUND[1]

On November 11, 2010, Plaintiff Hazel Thomas was a tenant at CMHA's Addison Square apartment complex. During her tenancy with CMHA, Ms. Thomas signed multiple "Drug-Free Household Statements" acknowledging that she was not permitted to have any illegal drugs in her possession while on CMHA property, and that if such drugs were found in her possession, she could face eviction. Ms. Thomas understood that this prohibition applied to the possession of prescription drugs for which she did not have a prescription, and further understood that such possession would constitute a felony.

---

[1] The factual summary is derived from the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

Defendant Brandon Hizak was a sworn law enforcement officer employed by CMHA in its police department at the time of the events at issue here. On November 11, 2010, Ms. Thomas was visiting with her daughter in her daughter's car parked just outside the entrance to her building. Ms. Thomas saw Officer Hizak pull up to the front of the building and a friendly wave was exchanged. Ms. Thomas had seen Officer Hizak a couple of times with the building manager but had never met him. Ms. Thomas entered the building to get something for her daughter and decided to gather her medications so she would not have to return to her apartment before spending the evening with her boyfriend, Gregory Stallings, another resident of the building. She placed three different medications into a single clear prescription bottle that had her name on the label. Ms. Thomas walked through the lobby of the building holding the pill vial on her way to her daughter's car. Officer Hizak saw the pill vial and inquired about it. Ms. Thomas told him that the pills were her prescribed prescription and continued outside to her daughter's car.

After sitting with her daughter for a time, Ms. Thomas re-entered the building. Officer Hizak stopped Ms. Thomas and questioned her about the pill bottle in her hand. Officer Hizak asked to see the pill bottle and Ms. Thomas claims that she gave the bottle to him after he threatened her with a drug charge. Officer Hizak opened the bottle and asked her what the pills were for. Plaintiff responded that they were prescription medications. Officer Hizak asked Plaintiff if she had a prescription for the medications in the bottle and Ms. Thomas said she had a prescription for each of the medications in her apartment. Officer Hizak followed Plaintiff to her apartment to see if she had a prescription for the medications. At her apartment, Plaintiff opened the door with her keys and entered leaving the keys in the door and the door open. Officer Hizak

took the keys from the door and entered the apartment. Officer Hizak states that he asked Plaintiff if he could enter and told her it was not safe to leave the keys in the door. Officer Hizak entered the apartment and closed the door behind him. Unknown to Officer Hizak the door locks when closed. Ms. Thomas states that she did not invite Officer Hizak to enter but did not ask him to leave. Ms. Thomas went to her bedroom to search for the prescriptions and Officer Hizak followed her. He asked her if she was able to find her prescriptions and used his flashlight to illuminate the dark bedroom. Ms. Thomas states that Officer Hizak shined the flashlight on both dressers in the room and took a pill off of one of the dressers. At that point Ms. Thomas stated they had to leave and suggested that the prescriptions might be in her boyfriend's apartment. Ms. Thomas left her apartment and proceeded to her boyfriend's apartment with Officer Hizak following.

Upon reaching Mr. Stallings apartment, Ms. Thomas opened the unlocked door and went in. Officer Hizak remained in the hallway and knocked on the door. Ms. Thomas invited him in. Officer Hizak stood in the kitchen while Ms. Thomas looked for her prescriptions. Ms. Thomas was unable to locate her prescriptions. Mr. Stallings came out of the bedroom and asked what was going on. Officer Hizak noticed two pills on a table and asked what they were for and whether Plaintiff and Mr. Stallings took each others pills. Ms. Thomas states that Officer Hizak threatened them both with drug charges and eviction. Officer Hizak states that he reminded them both of CMHA's drug policies, the violation of which would lead to eviction. Mr. Stallings offered to get Officer Hizak a copy of Plaintiff's prescriptions from the pharmacy. Officer Hizak said that would be fine. Mr. Stallings returned to the bedroom, Officer Hizak handed the pill vial back to Ms. Thomas and left the apartment.

The next day upon returning to her apartment, Plaintiff claims that her door was open and her bathroom had been ransacked and her pills scattered. Plaintiff felt that Officer Hizak had returned and was scared to stay in the unit. Officer Hizak states that he did not return to the apartment and there is no evidence that he did. Mr. Stallings never obtained the pharmacy printout and Officer Hizak did not raise the issue again.

One month later, Plaintiff filed a complaint with CMHA about Officer Hizak's conduct. Plaintiff asserts that CMHA concluded in writing that Officer Hizak was acting in accordance with applicable laws and CMHA policies and customs. In her Amended Complaint Plaintiff asserts state law claims of false imprisonment, assault, invasion of privacy and intentional infliction of emotional distress against Officer Hizak and a federal claim of civil rights violations pursuant to 42 U.S.C. §1983 against both CMHA and Officer Hizak. Both Defendants now move for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual dispute is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative" the court may decide the legal dispute and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence, which if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's

5

>pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. FED. R. CIV. P. 56(e)(3).

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs*., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(c) also states that:

>(2) [a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence
>…
>(4) An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c)(2),(4). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

>If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Wiley,* 20 F.3d at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing

law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id*. at 249. The judge's sole function is to determine whether there is a genuine factual dispute for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual disputes that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. It is with this standard in mind that the Motions for Summary Judgment shall be decided.

## DISCUSSION

Moving first to Officer Hizak's Motion for Summary Judgment, Officer Hizak asserts that he is entitled to qualified immunity and summary judgment on Plaintiff's Fourth Amendment Claim under § 1983. In addition, he further contends that he is entitled to summary judgment on Plaintiff's state law claims as well. The Court will address the federal claim under § 1983 first.

### I. Qualified Immunity on § 1983 Claim

Officer Hizak moves for summary judgment based on qualified immunity. Qualified immunity is an affirmative defense that protects government officials performing discretionary functions from civil suits if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to determine whether qualified immunity is warranted, a

court must ask (1) whether the alleged facts, taken in a light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established in the specific context so that a reasonable official would understand that he is violating that right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). A court need not address these steps in any particular order, nor must a court address both steps if the defendant makes an insufficient showing on one. *Pearson v. Callahan*, 555 U.S. 223 (2009). Whether a defendant is entitled to qualified immunity is a purely legal question appropriate for summary judgment, but summary judgment is inappropriate where "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). Therefore, this Court must view the disputed facts in a light most favorable to Plaintiff when making its determination on the issue of qualified immunity. *See Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 900 (6th Cir. 2004); *Kelley v. LANs*, No. 3:05-CV-7474, 2007 U.S. Dist. LEXIS 51944, at *13-14 (N.D. Ohio Jul. 18, 2007).

As with summary judgment, the burden of proof shifts between parties in a case where a defendant asserts that he is qualifiedly immune from suit. The defendant bears the initial burden of coming forward with facts that suggest that he acted within the scope of his discretionary authority at the time in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City*, 336 F.3d 487, 490-1 (6th Cir. 2003). This burden requires that the plaintiff: (1) identify a clearly established right; and (2) establish that a "reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of

8

that right." *Green v. Reeves*, 80 F.3d 1101, 1103 (6th Cir. 1996). The plaintiff must present additional facts that show not only a violation of his rights but also "that those rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from conduct." *Veney v. Hogan*, 70 F.3d 917, 921 (1995) (citation omitted).

Officer Hizak contends that Plaintiff cannot establish any unconstitutional seizure in violation of the Fourth Amendment. In Count Four of her Amended Complaint alleging violation of § 1983, Plaintiff asserts that "Officer Hizak, without just cause or provocation, with the threat of force and show of authority, repeatedly detained, threatened, coerced, and restrained Plaintiff's freedom of movement...." (ECF #8, ¶24) Defendant interprets this allegation as asserting a claim for an unreasonable seizure of her person in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. No other constitutional violations are alleged in Count Four. In response to Defendant's motion for summary judgment, Plaintiff argues that in addition to violating the proscription against an unreasonable seizure of her person, Officer Hizak's conduct also constituted an unreasonable seizure of the pill vial and an unreasonable search of her apartment. The Court need not address claims that are asserted for the first time only in response to a motion for summary judgment. *See Desparois v. Perrysburg Exempted Village School*, 455 Fed. Appx. 659, 666 (6th Cir. 2012); *Tucker v. Union of Needletrades, Indust. & Textile Emps.*, 407 F.3d 784 (6th Cir. 2005).

Officer Hizak asserts that he is entitled to qualified immunity because Plaintiff has failed to present sufficient evidence to establish that Officer Hizak's investigatory stop violated the Fourth Amendment. A law enforcement officer is permitted under the Fourth Amendment to

9

conduct an investigatory stop if he has a "reasonable suspicion" of criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006); *Feathers v. Aey*, 319 F.3d 843, 848-49 (6th Cir. 2003). While hard to define, reasonable suspicion for an investigatory stop "requires more than a 'mere hunch,' but it is satisfied by a likelihood of criminal activity less than probable cause, and 'falls considerably short of satisfying the preponderance of the evidence standard.'" *Smoak*, 460 F.3d at 778 (citations omitted). In other words, a police officer may stop and question an individual without violating the Fourth Amendment if he possesses "a particularized and objective basis for suspecting the particular person . . . of criminal activity based upon specific and articulable facts." *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012). The Court must examine the totality of the circumstances in determining whether reasonable suspicion exists. "[T]he lawfulness of an investigatory stop is judged by the totality of the circumstances to 'determine whether individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *Id.* at 494 (citing *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008)).

In this case, Officer Hizak asserts that he had a reasonable basis to suspect that Plaintiff may have been involved in criminal activity because under Ohio law, the possession of controlled substances is a crime unless the person "obtained the controlled substance pursuant to a lawful prescription issued by a licensed health professional authorized to prescribe drugs." Ohio Rev. Code § 2925.11. The existence of a lawful prescription is an affirmative defense that must be proven by the defendant. See *State of Ohio v. Skorvanek*, 182 Ohio App.3d, 2009-Ohio-1709. Officer Hizak states in his deposition that he saw Ms. Thomas carrying a pill vial with

10

different types of pills. Officer Hizak stated that the vial was a plastic see through bottle and Ms. Thomas was carrying the vial between her thumb and index finger. Accordingly, Officer Hizak asserts that it was reasonable for him to question Ms. Hizak about the nature of the drugs and whether she had a valid prescription for all of them. Ms. Thomas argues that while the bottle was see-through plastic, a label covered most of the bottom of the bottle. Thus, she does not believe that Officer Hizak actually could see that there were different types of controlled substances in the bottle, and consequently he lacked reasonable suspicion to stop her to question her about the substances or to seize the bottle. In her deposition, Ms. Thomas reluctantly acknowledged that Officer Hizak had right to stop and question her based on what he observed–multiple pills in an unmarked vial. Ms. Thomas' disbelief, without any supporting evidence, that Officer Thomas did not actually observe different pills in the vial before he stopped her does not create a material question of fact. She was in fact carrying different controlled substances for which she did not have a prescription, at least on her person, at the time of the stop. The Court finds that Officer Hizak had reasonable suspicion to stop Plaintiff to question her about the drugs she was carrying, examine the pill bottle and its contents and to question whether she had valid prescriptions for the drugs.

Plaintiff next asserts that Officer Hizak unreasonably prolonged the stop by going to her apartment in search of a valid prescription. However, as Officer Hizak notes, Plaintiff prolonged the stop by failing to provide any evidence of a lawful prescription. Rather, she told him she had the prescriptions in her apartment. The question of whether Officer Hizak asked her to get the prescriptions or whether Plaintiff offered is not material. Plaintiff admits she told Officer Hizak that she had the prescriptions in her apartment and that she knew that she was leading Officer

11

Hizak to her apartment in order to get the prescriptions to prove she had not violated the law. While Plaintiff states that she found Officer Hizak to be intimidating because he was carrying a gun, she admits that Officer Hizak never used any force, or threat of force, to restrain her at any time. It was not unreasonable for Officer Hizak to follow through with Plaintiff's offer to produce valid prescriptions for the controlled substances in her possession.

When they arrived at Plaintiff's apartment, Plaintiff left her keys in the door and the door open. She did not object when Officer Hizak followed her into her apartment while she looked for her prescriptions. Based upon the totality of the circumstances, it was reasonable for Officer Hizak to believe that Plaintiff consented to his entry into her apartment. Ms. Thomas states that she was uncomfortable when Officer Thomas entered her bedroom and shined his flashlight into the dark room to illuminate her dressers. However, when she was unable to find her prescriptions and asked him to leave he complied. Moreover, the only reason Officer Hizak followed her to Mr. Stallings apartment was because she told him that a pill vial with a valid prescription label may be in that apartment. There is no question that Officer Hizak was invited into Mr. Stallings apartment and that he stayed only long enough for Ms. Thomas to search for her pill vial. When Plaintiff failed to find the pill bottle, Officer Thomas accepted Mr. Stallings offer to get her pharmacy records and left. Officer Thomas returned Plaintiff's pill vial as well as the single pill from her dresser before he left Mr. Stallings' apartment. Based upon the totality of the circumstances in this case, Officer Hizak's investigatory stop was reasonable and the degree of intrusion was limited to conducting the most limited investigation necessary to confirm or dispel his suspicions. See *Hoover*, 682 F.3d at 498.

Plaintiff's suggestion that Officer Hizak violated the Fourth Amendment because he made her feel as though she was unable to leave her apartment, and thus was "seized" is unpersuasive. A Fourth Amendment seizure occurs when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Smoak*, 460 F.3d at 778. There is no evidence that Plaintiff was actually seized in that she was not handcuffed or prevented physically from leaving her apartment. There is no allegation that Officer Hizak touched her or in any way attempted to physically restrain Plaintiff. Indeed, Officer Hizak left her apartment without complaint or discussion when she said they needed to leave. Moreover, the Court has already determined that Officer Hizak's investigatory stop including the brief trips to the two apartments was reasonable in these circumstances.

Plaintiff also suggests that Officer Hizak's seizure of the pill vial violated the Fourth Amendment. However, as discussed above, Plaintiff handed over the pill vial during the initial stop and Officer Hizak's brief detention of it to evaluate his suspicions of unlawful drug activity was reasonable. The pill vial was returned to Plaintiff within a reasonable time.

In sum, the facts, viewed in a light most favorable to Plaintiff, do not show that Officer Hizak violated her Fourth Amendment rights. Officer Hizak has met his burden of producing facts showing that he acted within the scope of his discretionary authority at the time in question. Plaintiff has not carried her burden of showing that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of her Fourth Amendment rights. The second part of the qualified immunity standard places the burden on the Plaintiff to present specific case law to establish that Office Hizak should have clearly known that his conduct was unconstitutional "in the situation he confronted." *Brosseau v. Haugen*, 543

U.S. 194, 200 (2004) Ms. Thomas does not cite to any cases that would establish that a reasonable police officer in Officer Hizak's position would have clearly known that he lacked reasonable suspicion to conduct the investigatory stop at issue here. Accordingly, Officer Hizak is entitled to qualified immunity on Plaintiff's § 1983 claim.

Plaintiff also asserts a § 1983 claim against Defendant CMHA that asserts that CMHA "established, instituted, maintained and encouraged an express policy and procedures to unlawfully, illegally, and wrongfully detain, threaten, harass, and restrain persons, thereby causing the ... constitutional deprivations by Defendant Hizak, who was acting in accordance with such policy and/or in accordance with a widespread well-settled practice, constituting custom or usage under color of State law and official ...CMHA policy, all of which has deprived Plaintiff of her constitutional rights, privileges and immunities." (ECF #8, ¶23) CMHA moves for summary judgment on this claim because Plaintiff cannot establish any constitutional violation by Officer Hizak.  It is well established, and specifically recognized by Plaintiff, that municipal liability cannot exist under § 1983 unless a constitutional violation has been proven. See *Voyticky v. Village of Timberlake*, Ohio, 412 F.3d 669, 679 (6th Cir. 2005) Thus, "if no constitutional violation by the individual defendant is established, the municipal defendants cannot be held liable under § 1983."  *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001); *France v. Lucas*, No. 1:07 CV 3519, 2012 WL 5207555, *9 (N.D. Ohio Oct. 22, 2012).

In this case, the Court has determined that Plaintiff failed to establish a constitutional violation on the part of Officer Hizak and has determined that he is entitled to qualified immunity for his actions on November 11, 2010. As such, CMHA is also entitled to summary judgment in its favor on Plaintiff's § 1983 claim.

14

**II. State Law Claims**

Because Plaintiff's federal claim has been dismissed, the only remaining claims are state law claims. It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent, or supplemental, jurisdiction over state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Taylor v. First America Bank-Waynd, 973 F.2d 1284, 1289* (6th Cir. 1992)*; Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 319 (1987) (after dismissing all federal claims, it was error for the district court to have retained jurisdiction over the purported state law claims for the purpose of dismissing them with prejudice. The district court instead should have remanded the pendent state claims to the state court from which they were originally removed.); *Burt v. Blue Shield*, 591 F.Supp. 755, 759 (S.D.Ohio 1984). In keeping with these precedents, the Court will decline to assert supplemental jurisdiction over Plaintiff's remaining State law claims and this action will be remanded to the Cuyahoga County Court of Common Pleas from which it was removed.

**CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS Defendant Officer Hizak's Motion for Summary Judgment (ECF #34) as to Plaintiff's § 1983 claim. The Motion of Defendant CMHA for Summary Judgment (ECF #38) is GRANTED. The Court declines to accept supplemental jurisdiction over the remaining State law claims. Accordingly, the Clerk of Courts is ordered to REMAND this action to the Court of Common Pleas for Cuyahoga County, Ohio.

IT IS SO ORDERED.

                                                                      */s/Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT COURT

DATED: March 4, 2013